## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **JONATHAN HOLTZMAN, et al.**, | 2:19-cv-11150 |
| Plaintiffs, | |
| v. | HON. TERRENCE G. BERG |
| **VILLAGE GREEN MANAGEMENT COMPANY LLC**, | |
| Defendant. | **ORDER GRANTING MOTION IN THE ALTERNATIVE TO TRANSFER CASE TO DISTRICT OF DELAWARE** |

This case arises from a so-called "business divorce" that has resulted in a number of lawsuits, including this one. The dispute before this Court pertains to whether the Defendant is unlawfully using Plaintiff Jonathan Holtzman's family name and history in its advertising. Holtzman and his wholly owned company, City Club Apartments, LLC, also a plaintiff, are seeking a preliminary injunction to stop Defendant Village Green Management Company, LLC from using the Holtzman family name and history in the company's website and advertising, and from claiming that Village Green Management Company, LLC was established in 1919 and is therefore 100 years old. Plaintiffs' underlying claims involve alleged violations of the Lanham Act, 15 U.S.C. § 1125, and common law prohibiting unfair competition. Relying on a forum-selection clause contained in the agreement that

1

established the terms of the "business divorce," Defendant Village Green Management Company, LLC seeks to dismiss this suit under the principle of *forum non conveniens* or, alternatively, to transfer the case to a federal court in Delaware pursuant to 28 U.S.C. § 1404(a). For the reasons discussed herein, the Court will grant Defendant's motion in the alternative, ECF No. 7, and transfer this case to the District of Delaware. Plaintiffs' motion for a preliminary injunction, ECF No. 15, will accordingly be denied.

## BACKGROUND

Until 2016, Plaintiff Jonathan Holtzman was the principal owner of the Holtzman family's conglomerate of business entities (the "Village Green entities"). ECF No. 1, PageID.1, 3 (Compl.). For approximately 100 years, the Village Green entities have engaged "in the business of developing, operating and managing high-end multifamily housing complexes." ECF No. 1, PageID.1, 3. In 2011, Holtzman agreed to partner with CCI Historic, Inc. ("CCI"), a Dallas-based private-equity firm. *Id.* As a result of that agreement, CCI became a 50-percent owner of the Village Green entities. *Id.* Defendant Village Green Management Company, LLC, a Delaware limited-liability company, was established as part of the process of organizing this partnership. ECF No. 14-2, PageID.354 (Holtzman Decl.). *See* ECF No. 14-5 (Village Green Management Company, LLC Del. Dep't of State Profile) (providing an incorporation date of 10/04/2011). According to Mark Van Kirk, CCI's President,

Defendant Village Green Management Company, LLC was formed "[i]n connection with the execution" of this deal and continued to perform the property-management functions that had previously been performed by another entity also called Village Green Management Company. ECF No. 22-2, PageID.565–66 (Van Kirk Decl.). The older Village Green Management Company entity was established "around 1966." ECF No. 22-3, PageID.720 (Diane Batayeh Decl.).

After a few years, the relationship between CCI and the Village Green entities began to deteriorate. Plaintiffs contend that CCI's method of "maximizing profit at the expense of quality service" was incompatible with the Village Green entities' business ethos. ECF No. 1, PageID.1, 3. Because of this discord, in 2016 Holtzman and CCI agreed to a "business divorce" which was executed through a contract labelled the "Redemption Agreement". *See* ECF No. 1, PageID.5. The primary purpose of this agreement was "to divide up the ownership of the assets of [the] Village Green [entities]." ECF No. 22-2, PageID.566. The Redemption Agreement includes a clause providing that "any party may publicly or privately relay the history of 'Village Green' generally and the VGH [Village Green Holding] entities in the aggregate, including for marketing reasons, but no Party may misrepresent such history." ECF No. 7-1, PageID.171.

Pursuant to the Redemption Agreement, CCI acquired Holtzman's share of the Village Green property-management entities, including now-Defendant Village Green Management Company, LLC. Accordingly, CCI

now has complete control of Defendant Village Green Management Company, LLC and other entities responsible for managing Holtzman's properties. ECF No. 1, PageID.4. Holtzman in turn, through an entity named Village Green Residential Properties, purchased properties that had previously been jointly owned with CCI and also secured an option to purchase properties being developed together with CCI, including projects known as Morrow Park and Southside Works. ECF No. 1, PageID.4–5. In addition, Holtzman established a new management company of his own, City Club Apartments, the other Plaintiff in this suit. ECF No. 14-2, PageID.354 (stating that Holtzman incorporated City Club Apartments in December 2015). Holtzman is Chief Executive Officer, Manager, and Co-Chairman of City Club Apartments.

Plaintiffs' main contention is that Defendant Village Green Management Company, LLC misleads the renting public and businesses operating in the multi-family housing industry by advertising itself as an entity established in 1919 and improperly touting accolades acquired during the Holtzman family's ownership and operation of the properties. ECF No. 1, PageID.5, 7. Essentially, Plaintiffs urge that Village Green Management Company, LLC is coopting the Holtzman family's legacy of success in developing and managing single and multi-family residential communities. The record indicates that Joseph Holtzman, the grandfather of Plaintiff Jonathan Holtzman, began developing, building, and managing apartment communities in 1919. ECF No. 1, PageID.6.

That operation was subsequently taken over by Holtzman & Silverman. ECF No. 1, PageID.6. The Village Green entities, which CCI acquired as a result of the Redemption Agreement, were not established until 1968 and were initially owned and operated by Joseph Holtzman and subsequently by Jonathan Holtzman in conjunction with "various successive partners, including CCI." ECF No. 1, PageID.6.

On November 21, 2018, counsel for Plaintiffs sent a cease-and-desist letter requesting that CCI immediately refrain from "using misleading and unauthorized advertising materials referring to the Village Green companies' purported activities and history that pre-date such companies' inception." ECF No. 5, PageID.16 (Nov. 21, 2018 Cease-and Desist Notice). Village Green Management Company, LLC continued to engage in the challenged conduct so on April 19, 2019 Plaintiffs Holtzman and City Club Apartments filed the instant lawsuit. *See generally* ECF No. 1.

The record shows as well that Holtzman and some of the Village Green entities are also in litigation with CCI and its parent entity, Compatriot Capital, Inc., in Delaware Chancery Court, where Defendant would prefer this case be litigated.[1] There, Holtzman, Village Green Residential Properties, LLC, and VGM Clearing, LLC are suing

---

[1] Defendant primarily seeks dismissal under forum non conveniens on the basis that this case should be litigated in Delaware Chancery Court, but as alternative relief acknowledges the Court could also transfer this matter to the District of Delaware.

Compatriot and CCI for claims "stem[ming] from the 'business divorce' between Compatriot and Mr. Holtzman." ECF No. 7-1, PageID.63. More specifically, that litigation involves CCI and Compatriot's alleged interference with Holtzman's rights under the Redemption Agreement to purchase the Morrow Park and Southside Works properties. *See* ECF No. 1, PageID.2; ECF No. 7-1, PageID.67–68 (Del. Ch. Compl. #1). The complaint in that case, filed by Holtzman and two of his companies, states that under the Redemption Agreement the parties have "consent[ed] to personal and exclusive jurisdiction in Delaware for purposes of litigation arising from or relating to certain business of Village Green and the Redemption Agreement." ECF No. 7-1, PageID.225.

In another lawsuit, also pending in Delaware Chancery Court, Village Green Holding LLC, owned by CCI, is suing the Plaintiffs in this case (Holtzman, and City Club Apartments), as well as other related entities. ECF No. 7-1, PageID.223. (Del. Ch. Compl. #2). The complaint in that case, which also arises from the Redemption Agreement, likewise states that "[t]he [Delaware Chancery] Court has personal jurisdiction over each of the Defendants because in the Redemption Agreement each party consented to personal and exclusive jurisdiction in Delaware for purposes of litigation arising from or relating to certain business of Village Green and the Redemption Agreement." ECF No. 7-1, PageID.225. The central question now before the Court is whether the

instant litigation should be transferred to a state or federal court in Wilmington, Delaware because of the forum-selection clause in the Redemption Agreement.

Defendant Village Green Management Company, LLC has moved to dismiss this case under the doctrine of forum non conveniens or, in the alternative, to transfer the matter to a federal district court in Wilmington, Delaware pursuant to 28 U.S.C. § 1404(a). Defendant roots this request for dismissal or transfer in the Redemption Agreement's forum-selection clause, which provides:

> Each party to this agreement hereby consents to the jurisdiction of any United States District Court or Delaware State Court located in Wilmington, Delaware and irrevocably agrees that all actions or proceedings arising out of or relating to this agreement or the transactions contemplated hereby (whether such actions or proceedings are based in statute, tort, contract or otherwise), shall be litigated in such courts.

ECF No. 7-1, PageID.169. Plaintiffs have also filed a motion for a preliminary injunction requesting that this Court order Village Green Management Company, LLC to refrain from engaging in the challenged advertising conduct during the pendency of this litigation. *See* ECF No. 15. Oral argument was presented to the Court on both motions on October 31, 2019.

## DISCUSSION

Although the plain language of the Redemption Agreement's forum-selection clause mandates that the parties have consented to "the

jurisdiction of any United States District Court *or* Delaware state court located in Wilmington Delaware" for any dispute arising from the Redemption Agreement, ECF No. 7-1, PageID.169 (emphasis added), Village Green Management Company, LLC argues that dismissal of Plaintiffs' case under forum non conveniens is a more appropriate remedy than transfer to the District of Delaware.[2] Defendant's basis for this position is that the parties are already involved in other "pending, related litigation" in Delaware Chancery Court. ECF No. 7, PageID.45. *See supra* at 5–6. Dismissing a case pursuant to the doctrine of forum non conveniens, however, is a harsh step that has become a rare and generally inappropriate remedy in the wake of § 1404(a)'s enactment. 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3828 (4th Ed. 2019). Having carefully considered the arguments of the parties and the relevant authorities, the Court declines to dismiss this case under forum non conveniens and will instead transfer the suit to a federal district court in the District of Delaware.

---

[2] The fact that Plaintiffs are asserting claims under the federal Lanham Act, 15 U.S.C. § 1125(a), would not prevent the Court from applying forum non conveniens because federal courts do not have exclusive jurisdiction over Lanham Act claims. *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 84 F.3d 1388, 1394 (11th Cir. 1996) (citing 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121). *See Stark v. Gov't Accounting Sol., Inc.*, No. 2:07-cv-755, 2009 WL 649673, at *5 (S.D. Oh. Mar. 9, 2009) ("[F]ederal courts do not have exclusive jurisdiction over claims brought under the Lanham Act."); *Ryan v. Volpone Stamp Co., Inc.*, 107 F. Supp. 2d 369, 395–96 (S.D.N.Y. 2000) ("[A] federal court's jurisdiction over Lanham Act claims is concurrent with that of the state courts . . . .").

## A. Forum non conveniens dismissal is disfavored where an alternative federal forum is available.

The doctrine of forum non conveniens applies where the "superior alternative forum is in a different judicial system—typically, the court of another country" and accordingly "there is no mechanism by which the case may be transferred."[3] *Id.* Instead, the Court's remedy is to dismiss or stay the case pursuant to forum non conveniens. *Id.* Because dismissal is viewed as a drastic step, today the federal doctrine of forum non conveniens generally "has continuing application only in cases where the alternative forum is abroad," *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994), "and perhaps in rare circumstances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co. Ltd. v. Malaysis Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (citing 8 Wright & Miller, *Federal Practice and Procedure* § 3823, pp. 620–23 & nn.9–10). Further, the Sixth Circuit has expressly stated that "[f]ollowing enactment of 28 U.S.C. § 1404(a) in 1961, the doctrine of forum non conveniens now only applies in cases in which the alternative forum is in another country." *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 523 n.1 (6th Cir. 2010). In contrast, "[i]f another federal district is an alternative forum, dismissal on grounds of forum

---

[3] Assessing a motion to dismiss under forum non coveniens entails a three-step analysis. "After the court determines the degree of deference owed the plaintiff's forum choice, the defendant carries the burden of establishing an adequate alternative forum and showing that the plaintiff's chosen forum is unnecessarily burdensome based on public and private interests." *Hefferan v. Ethicon Endo–Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016).

non conveniens is inapplicable and § 1404(a) applies." *Id.* (citing *Sinochem Int'l Co. Ltd.*, 549 U.S. 422, 430 (2007)). *See Nollner v. S. Baptist Convention, Inc.*, No. 3:14-cv-1065, 2014 WL 3749522 (M.D. Tenn. Jul. 30, 2014) (finding doctrine of forum non conveniens inapplicable where defendants sought transfer to an alternative federal forum within the United States).

Interpreting the Supreme Court's influential 2013 decision in *Atlantic Marine*, a court in the Southern District of New York also concluded that where courts are dealing with a forum-selection clause that provides for jurisdiction in either a state or federal court, as the clause at issue in this case does, *Atlantic Marine* counsels that § 1404(a)—and not forum non conveniens—should be applied. *Pence v. Gee Group, Inc.*, 236 F. Supp. 3d 843, 849 (S.D.N.Y. 2017) (discussing *Atlantic Marine Construction Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49 (2013)). In *Atlantic Marine* the Court was dealing with a forum-selection clause that permitted suit to be brought either in the Circuit Court for the City of Norfolk Virginia or in the Eastern District of Virginia, Norfolk Division. *Id.* at 53. Yet the Supreme Court "analyzed the propriety of the transfer exclusively under 28 U.S.C. § 1404(a) rather than the common law doctrine of forum non conveniens." *Pence*, 236 F. Supp. 3d at 849.[4] Similarly, in *Childress Cattle, LLC v. Cain* a federal

---

[4] In *Atlantic Marine,* the defendant had sought either dismissal pursuant to Rule 12(b)(3) or transfer consistent with 28 U.S.C. § 1406 or § 1404(a). *U.S. ex rel. J-Crew*

court in the Western District of Kentucky determined that because the defendants were not seeking forum non conveniens dismissal on the basis that the case should be litigated in a foreign venue and in fact agreed that venue was proper in Indiana, including in a federal district court in Indiana, dismissing the action under forum non conveniens "would be an inappropriate application of the doctrine." No. 3:17-cv-003888-JHM, 2017 WL 3446182, *10 (W.D. Ky. Aug. 10, 2017). This review of recent forum non conveniens jurisprudence suggests that application of the doctrine would be inappropriate in this case, where the forum-selection clause states that litigation arising from the Redemption Agreement must be litigated in state court *or* federal court in Delaware.

## B. Transfer pursuant to 28 U.S.C. § 1404(a) is appropriate where an alternative federal forum is available.

In contrast, when venue is proper where the plaintiff initially filed the case, as the parties agree it is in the Eastern District of Michigan, but another federal district court would be a more convenient forum, the court may transfer the case to that district court under 28 U.S.C. § 1404(a). Section 1404(a) is essentially a codification of the doctrine of forum non conveniens that applies where the transferee venue would be within the federal court system. *Atlantic Marine*, 571 U.S. at 60. The statute establishes three general requirements for transfer that are

---

*Mgmt., Inc. v. Atlantic Marine Const. Co., Inc.*, No. A–12–CV–228–LY, 2012 WL 8499879 (W.D. Tex. Aug. 6, 2012). The district court opinion accordingly did not address forum non conveniens.

almost identical to those for forum non conveniens dismissal: (1) the action could have been filed in the transferee district court; (2) transfer serves the interests of justice; and (3) transfer is convenient for the witnesses and parties. *Applied Energy Techs., Inc. v. Solar Liberty Energy Sys., Inc.*, No. 09–CV–11959–DT, 2009 WL 2777079, at *5 (E.D. Mich. Aug. 27, 2009) (citing *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000)). Factors districts courts typically consider in determinizing whether § 1404(a) transfer is warranted include: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Perceptron, Inc. v. Silicon Video, Inc.*, 723 F. Supp. 2d 722, 729 (E.D. Mich. 2006). Because the forum-selection clause at issue provides that this litigation could have been brought in either federal district court or state court in Delaware, the Court will apply § 1404(a) and related jurisprudence to determine whether this matter should be transferred to the District of Delaware.

## C. Presence of a forum-selection clause alters forum non conveniens and § 1404(a) analysis

If a forum-selection clause is enforceable and binding on the parties it alters the court's traditional § 1404(a) transfer analysis.[5] Although the Sixth Circuit instructs that the presence of a valid forum-selection clause is not dispositive and must be weighed against the other factors enumerated in § 1404(a), *Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 370 (6th Cir. 2008), the practical import of a valid and applicable clause is that the "forum-selection clauses will almost always control." *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 568. *But see Kerobo*, 285 F.3d at 537–38 (stating that a valid forum-selection clause should not receive dispositive consideration but rather "the consideration for which Congress provided in § 1404(a)"). In contrast, where a forum-selection clause does not appear to govern the action, or its validity is uncertain or disputed, the clause may be given less weight or ignored altogether. *See Auto-Wares, LLC v. Wis. River Co-op Servs.*, No. 1:09–cv–702, 2010 WL 2508356, at *3 (W.D. Mich. June 17, 2010) ("A forum-selection clause is but one factor to consider in deciding whether a transfer is appropriate under § 1404(a)) (citing *Kerobo*, 285 F.3d at 537).

---

[5] The Sixth Circuit has described § 1404(a) transfer as "the primary vehicle to enforce a forum selection clause when venue is challenged."[5] *Cinetic Dyag Corp. v. Forte Auto. Sys., Inc.*, No. 2:08–cv–11790, 2008 WL 4848005, at *9 n.5 (E.D. Mich. Nov. 6, 2008) (citing *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 535 (6th Cir. 2002)).

Critically, the Supreme Court's *Atlantic Marine* decision requires that courts modify their usual § 1404(a) transfer (and forum non conveniens dismissal) analysis in three ways when a valid forum-selection clause is present.[6] First, because the parties have already agreed to litigate in another district "the plaintiff's choice of forum merits no weight" and the plaintiff in fact bears the burden of establishing that dismissal or transfer is not appropriate. *Atlantic Marine*, 571 U.S. at 59–60. Second, when the parties are bound by a forum-selection clause "they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64. Such inconvenience was foreseeable at the time of contracting and district courts accordingly must honor the parties' agreement. *See id.* Finally, when a party bound by a forum-selection clause files suit in a different forum in violation of the parties' agreement a § 1404(a) transfer of venue will not carry with it the choice-of-law rules applicable in the original venue, as might ordinarily be the case. *Id.* at 64–65. The Court thus considers only the public-interest factors relevant to dismissal or transfer, which will "rarely defeat a transfer [or forum non conveniens] motion" based on a valid forum-selection clause. *Id.*

---

[6] Both § 1404(a) and forum non conveniens "entail the same balancing-of-interests standard" and courts therefore "should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Atlantic Marine*, 571 U.S. at 59–60.

### D. The forum-selection clause is enforceable by Defendant.

Before assessing whether the public-interest factors in this case weigh in favor of transfer, the Court must determine whether the Redemption Agreement's forum-selection clause may be enforced by Defendant Village Green Management, LLC. "A forum selection clause should be upheld absent a strong showing that it should be set aside." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Here, the Court finds the forum-selection clause to be enforceable as that phrase has been interpreted by the Sixth Circuit and other courts. Further, on the more difficult question of whether Defendant Village Green Management Company, LLC, a non-signatory to the Redemption Agreement, may invoke the clause against Plaintiffs (only one of whom is a signatory), the Court concludes it was reasonably foreseeable to both Plaintiffs that Defendant would seek to enforce the clause against them. Accordingly, the Court deems the forum-selection clause enforceable and will permit Village Green Management Company, LLC to invoke it against Plaintiffs.

When a federal court is sitting in diversity or deciding a case "in the context of any federal statute," federal law governs the inquiry of whether a forum-selection clause is generally enforceable.[7] *Wong*, 589 F.3d at 826

---

[7] At least one court in this district has also stated that federal common law likely governs the enforceability of a forum-selection clause where the court's subject-matter jurisdiction is based on the plaintiffs' assertion of a federal claim. *See Kessler*

(citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30 (1988)). *See 679637 Ontario Ltd. v. Alpine Sign & Printer Supply, Inc.*, 218 F. Supp. 3d 572, 576 (E.D. Mich. 2016) ("[F]ederal courts construing forum selection clauses apply federal common law, not the state law of the state in which the federal court sits.") (citing *Wong*, 589 F.3d at 828). Federal common law in turn directs that forum-selection clauses should be interpreted "by reference to ordinary contract principles." *679637 Ontario Ltd.*, 218 F. Supp. at 576 (citing *In re Delta Am. Re Ins. Co.*, 900 F.2d 890, 892 (6th Cir. 1990)). This requires courts to examine the contract's plain language to discern the parties' intentions. *In re Delta Am. Re Ins. Co.*, 900 F.2d at 892. If the language is clear, no further contract interpretation is needed. *See 679637 Ontario Ltd.*, 218 F. Supp. 3d at 576.

To assess whether a forum-selection clause is valid and enforceable, the Court must consider: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Wong*, F.3d at 828. The party seeking to avoid enforcement of the forum-selection clause has the burden of establishing that it is unenforceable. *Smith v. Aegon Cos.*

*v. Direct Consulting Assocs. LLC*, No. 17-11943, 2018 WL 7890862, at *3 (E.D. Mich. Jul. 6, 2018).

*Pension Plan*, 76 F.3d 922, 929 (6th Cir. 2014). Turning to the first enumerated criterion for assessing enforceability, nothing in the record suggests the forum-selection clause was entered into as a result of fraud, duress, or any other unconscionable means. Next, there is no indication that a state or federal court located in Wilmington would be unable to fairly and effectively handle this lawsuit. In fact, the parties have already brought cases in Delaware Chancery Court, including a lawsuit initiated by Plaintiff Holtzman pursuant to this same forum-selection clause. Plaintiffs have not shown that substantive law in either Delaware state court or the District of Delaware is different or less favorable than law in this district to the extent that "a risk exists that [they] will be denied any remedy or will be treated unfairly." *Wong*, 589 F. 3d at 829. Finally, although Holtzman asserts that he is based in Michigan, *see* ECF No. 14-2, he voluntarily submitted to personal jurisdiction in Delaware by filing one of his lawsuits there. Similarly, both Defendant Village Green Management Company, LLC and Plaintiff City Club Apartments are Delaware business entities, although City Club Apartments apparently does not own or manage any real estate in Delaware and Village Green Management Company, LLC has its principal office in Michigan. ECF No. 14-2, PageID.355. Nonetheless, the Court does not find that transferring this case to a state or federal court in Wilmington would so seriously inconvenience Holtzman or City Club Apartments so as to cause them to suffer any injustice.

Turning to the more specific question of whether Defendant Village Green Management Company, LLC, a non-signatory to the agreement containing the forum-selection clause, may nevertheless invoke the clause against Plaintiffs, the Court finds both the relevant jurisprudence as well as basic principles of fairness weigh in favor of allowing Village Green Management Company, LLC to invoke the clause against Plaintiffs Holtzman, a signatory, and City Club Apartments, which is not a signatory but is wholly owned by Holtzman. The Sixth Circuit has held that a non-signatory to a contract may be bound by a forum-selection clause in that contract "if the non-signatory is so sufficiently 'closely related' to the dispute that it is foreseeable that the party will be bound." *Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*, No. 5:09–CV–2613, 2011 WL 711568, *8 (N.D. Ohio Feb. 22, 2011) (citing *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1105–06 (6th Cir. 1997)). More broadly, the Sixth Circuit has also expressed that "a range of transaction participants, parties and non-parties should benefit from and be subject to forum selection clauses" where "the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants." *Wilson v. 5 Choices, LLC*, 776 F. App'x 320, 329, 2019 WL 2451068, at *7 (6th Cir. 2019) (unpublished) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) (additional citation omitted)). This inquiry demands the Court assess the totality of the circumstances

18

to determine whether, "in light of [the] circumstances, it is fair and reasonable to bind a non-party to the forum selection clause." *Hitachi Med. Sys. Am., Inc.*, 2011 WL 711568 at *9 (quoting *Regions Bank*, No. 3:09–1054, 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010)).

Although the Sixth Circuit has yet to decide this question, the Eleventh Circuit, in *Liles v. Ginn-La West End, Ltd.*, 631 F.3d 1242, 1256–57 (11th Cir. 2011) (per curiam), held that a non-signatory to an agreement can invoke a forum-selection clause contained therein against a signatory to that agreement based on the theory of equitable estoppel. Under the Eleventh Circuit's reasoning, equitable estoppel theory permits a non-signatory to invoke a forum-selection clause in two different circumstances. First, when the signatory to a written agreement containing a forum-selection clause "must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory." *Id.* (quoting *MS Dealer Serv. Corp.*, 177 F.3d at 947) (internal quotations omitted). If each of the signatory's claims against a non-signatory "makes reference to" or "presumes the existence of the written agreement" those claims "arise[ ] out of and relate [ ] directly to the agreement." *Id.* Allowing the non-signatory to invoke the clause is therefore appropriate. *Id.* Second, a non-signatory should also be permitted to enforce the clause against a signatory under equitable estoppel theory when the signatory "raises allegations

of . . . substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Id.*

At least one other district court in this circuit has adopted the Eleventh Circuit's equitable-estoppel reasoning in *Liles* and found it "consistent with the holdings and precedent established in the Sixth Circuit." *Villanueva v. Barcroft*, 822 F. Supp. 2d 726, 739 (N.D. Ohio 2011) ("The Court, therefore, adopts the test articulated in *Liles*"). As explained by the Northern District of Ohio court, the Sixth Circuit treats forum-selection clauses and arbitration provisions as highly analogous to one another and the Sixth Circuit has previously recognized that a non-signatory to an arbitration clause may invoke that provision against a signatory based on estoppel theory. *Villanueva*, 822 F. Supp. at 739 (discussing *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1138 (6th Cir. 1991) (describing arbitration clauses as "a particular type of forum selection clause.")). *See Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 6229 (6th Cir. 2003) (explaining that a signatory may be estopped from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the underlying contract).

Similarly, courts in the Northern District of Ohio and Eastern District of Tennessee, though not expressly adopting *Liles*, have held that because the Sixth Circuit allows district courts to enforce forum-selection clauses against non-signatories so long as the non-signatories are "closely

related" to the dispute and it was "foreseeable" they might be bound, non-signatories should themselves also be able to invoke forum-selection clauses against signatories. *See, e.g., Ricketts v. hybris AG*, No. 1:15 CV 277, 2015 WL 13679481 (N.D. Oh. June 19, 2015) (concluding that although defendants were non-signatories to the agreement containing the forum-selection clause they were "sufficiently closely related to the dispute by virtue of their involvement in [its] execution" to enforce the forum-selection clause) (internal quotations omitted) (citing *Reagan v. Maquet Cardiovascular U.S. Sales, LLC*, No. 1:14CV548, 2015 WL 521049, at *3–4 (N.D. Oh. Feb. 9, 2015)); *Hasler Aviation, L.L.C. v. Aircenter, Inc.*, No. 1:06–CV–180, 2007 WL 2463283, at *6 (E.D. Tenn. Aug. 27, 2007) (holding that "a particularly foreseeable non-signatory of the forum selection clause . . . may enforce it [or may have the clause enforced against him]"); *Wireless Props., LLC v. Crown Castle Int'l Corp.*, No. 1:10–cv–269, 2011 WL 3420734, at *5 (E.D. Tenn. Aug. 4, 2011) ("[T]he Court finds Defendants' argument that they can enforce the forum selection clause as non-signatories to be persuasive."); *The Hassinger Corp. v. Activation Solutions Inc.*, No. 3:09–cv–391, 2010 WL 1710779, at *3 (E.D. Tenn. Jul. 7, 2010) (same).[8]

---

[8] It is also "well established" in the Second Circuit that non-signatories may invoke a forum-selection clause against a signatory "where the non-signatory is 'closely related' to a signatory." *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 324 (S.D.N.Y. 2017) (quoting *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013)). For a non-signatory to enforce a forum-selection clause in the Second Circuit, "the relationship between the non-signatory and that

Applying the Eleventh Circuit's equitable-estoppel doctrine as well as Northern District of Ohio and Eastern District of Tennessee jurisprudence holding that a non-signatory can enforce a forum-selection clause so long as the non-signatory is "sufficiently 'closely related' to the dispute" by virtue of its involvement in the execution of the agreement, this Court finds that Defendant Village Green Management Company, LLC should be permitted to enforce the Redemption Agreement's forum-selection clause against Plaintiffs.

Although there was initially confusion among the parties on this issue, the Court is now satisfied that the Redemption Agreement's reference to "Village Green Management Company, a Delaware corporation" was a scrivener's error and that the drafters instead intended for the agreement to reference Defendant Village Green Management Company, LLC, which is a Delaware limited-liability company and wholly owned subsidiary of Village Green Holding LLC, a signatory to the agreement. *See* ECF No. 30, PageID.821 (Mark Van Kirk Decl.) ("I am not aware of any entity known as Village Green Management Company that is a Delaware corporation."); ECF No. 30-2 (LLC Agreement of Village Green Management Company, LLC) (describing the business entity as a Delaware LLC formed in 2011); ECF

(latter) signatory must be sufficiently close that the non-signatory's enforcement of the forum selection clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the forum selection clause." *Magi XXI, Inc.*, 714 F.3d at 723 (citing *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)).

No. 30-4 (Dec. 1, 2016 Ltr. from Village Green Holding LLC to Holtzman "on behalf of itself and on behalf of and as manager of Village Green Management Company LLC"); ECF No. 32-1, PageID.1031–32 (Jonathan Borenstein Dep. Tr.) (testifying that the Redemption Agreement's reference to "Village Green Management Company, a Delaware corporation," was intended to be a reference to Village Green Management Company, LLC, a Delaware LLC). *But see* ECF No. 31 (Pls.' Notice of Objection to Suppl. Decl.) (asserting that Defendant should have addressed the question of whether it has a right to invoke the forum-selection clause in its earlier briefing).

Because the evidentiary record indicates that Defendant Village Green Management Company, LLC is the business entity the parties intended to identify in the Redemption Agreement, and also a wholly owned subsidiary of signatory Village Green Holding LLC, Defendant is sufficiently closely related to the "business divorce" transaction and the Redemption Agreement such that it was foreseeable to Plaintiffs that Defendant would invoke the forum-selection clause against them.

Further, under the equitable estoppel theory espoused by the Eleventh Circuit and at least one court in the Northern District of Ohio, the Court observes that Plaintiffs' claims rely heavily on the Redemption Agreement and the "business divorce" it facilitated. *See Liles*, 631 F.3d at 1256; *Villanueva*, 822 F. Supp. 2d at 739. Plaintiffs repeatedly invoke the Redemption Agreement in their Complaint and although Plaintiffs'

23

Lanham Act claims and state-law claims prohibiting unfair competition do not expressly allege a breach of the Redemption Agreement, they assert that Village Green Management Company, LLC is inappropriately using the Holtzman family's legacy in the wake of the parties' unwinding of their business partnership pursuant to that agreement. Because the Redemption Agreement is the instrument that facilitated the divvying up of the former business partners' assets, rights, responsibilities, and liabilities, assessing whether Village Green Management Company, LLC is permitted to invoke the legacy of its previous partners will involve interpreting the various obligations created by that agreement.

It is noteworthy that Holtzman invoked this same forum-selection clause in an action he filed against Compatriot and CCI in Delaware Chancery Court involving claims "stem[ming] from the 'business divorce' between Compatriot and Mr. Holtzman." ECF No. 7-1, PageID.63, 225. In that case, Holtzman urged the Delaware Chancery Court that it had personal jurisdiction over the defendants because "they are all Delaware entities, and because they consented to personal jurisdiction in Delaware pursuant to Section 11.13 of the Redemption Agreement," which contains the forum-selection clause. ECF No. 7-1, PageID.72. The allegations in that state-court suit are similar to those Plaintiff now makes: that CCI and its parent company Compatriot are misappropriating the Holtzman family's 100-year-old business legacy. *See* ECF No. 7-1, PageID.107–08. Holtzman should not be permitted to enforce the forum-selection clause

when it is advantageous but prevent others from doing when it is less convenient in another case arising under the same agreement. Additionally, both Holtzman and City Club Apartments, the other Plaintiff in this suit, are also defendants in another Delaware Chancery Court lawsuit that relied on the forum-selection clause to justify that court's jurisdiction over claims arising under the Redemption Agreement. *See* ECF No. 7-1, PageID.225. Because this lawsuit "aris[es] out of and relate[s] directly to" the Redemption Agreement, allowing Defendant to invoke the forum-selection clause against Plaintiffs is appropriate. *Liles*, 631 F.3d at 1256.

Plaintiffs Holtzman and City Club Apartments are clearly bound by the agreement's forum-selection clause. When a plaintiff negotiates and agrees to a contract, the Sixth Circuit has expressed reluctance to let that plaintiff avoid enforcement of some contract provisions while seeking enforcement of others. *See Johnson v. Ventra Group, Inc.*, 191 F.3d 732, 739 (6th Cir. 1999). Here, Plaintiff is an original signatory to the Redemption Agreement and has previously invoked the agreement's forum-selection clause in Delaware state court. City Club Apartments, which is wholly owned by Holtzman, is also bound as an entity sufficiently closely related to an original signatory such that it was foreseeable the clause could be enforced against it.[9]

---

[9] City Club Apartments may also be bound by the forum-selection clause as an assignee under the Redemption Agreement. *See Regions Bank v. Wyndham Hotel*

### E. This lawsuit is encompassed by the forum-selection clause.

Having established that Defendant Village Green Management Company, LLC may enforce the forum-selection clause against Plaintiffs Holtzman and City Club Apartments, the Court will now examine whether the clause is applicable to the dispute at hand. Determining whether the forum-selection clause governs this suit is a matter of contract interpretation. 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3803.1. "The interpretation of a forum selection clause is an analytically distinct concept from the enforceability of that clause." *Collins on behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017) (citing *Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 770 (5th Cir. 2016) and *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)). Again, the Sixth Circuit instructs that "federal courts construing forum selection clauses apply federal common law, not the law of the state in which the federal court sits."[10] *679637 Ontario Ltd.*, 218 F.

*Mgmt., Inc.*, No. 3:09–1054, 2010 WL 908753, at *7–8 (M.D. Tenn. Mar. 12, 2010) (explaining that assignee meets the "closely related" threshold if the agreement containing the forum-selection clause is "specifically incorporated by reference" by another contract to which the party *is* a signatory") (quoting *Exch. Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274, 276 (6th Cir. 1984)). Village Green Holding LLC, a signatory to the Redemption Agreement, executed a Bill of Sale and Assignment and Acceptance of Pipeline Assets stating that City Club Apartments, the assignee, was being "formed to take an assignment of the Pipeline Assets as a 'designee' of the JH Companies [Village Green Management Clearing Company, and Village Green Residential Properties, LLC] under the Redemption Agreement." ECF No. 7-1, PageID.205.

[10] The Sixth Circuit has not expressly addressed the possible impact of a clause like that found in the Redemption Agreement, which is both a forum-selection and a choice of law clause. *See Kessler*, 2018 WL 7890862 at *3.

Supp. 3d at 576 (citing *Wong*, 589 F.3d at 828). And federal common law directs district courts to interpret forum-selection clauses using ordinary contract principles. *In re Delta Am. Re Ins. Co.*, 900 F.2d at 892.

The plain language of the Redemption Agreement's forum-selection clause is broad, explaining that the clause applies to "all actions or proceedings arising out of or relating to this agreement or the transactions contemplated [by the agreement]." ECF No. 7-1, PageID.169. Based on this plain language, the forum-selection clause at issue in this case is mandatory rather than permissive. A permissive clause permits jurisdiction in a designated forum but does not prohibit litigation elsewhere; a mandatory clause creates an exclusive forum for litigation under the contract. *679637 Ontario Ltd.*, 218 F. Supp. 3d at 576. The clause states that all disputes "arising out of or relating to" the Redemption Agreement "*shall* be litigated" in a federal district court or state court in Wilmington, Delaware. ECF No. 7-1, PageID.169 (emphasis added). The Sixth Circuit has stated that use of the word "shall," as opposed to terms like "may" or "should," when used in a forum-selection clause makes the clause mandatory, rather than permissive. *See Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994) ("Because the clause states that 'all' disputes 'shall' be at [Defendant's] principal place of business, it selects German court jurisdiction exclusively and is mandatory"); *Fl. St. Bd. of Admin. v. Law Eng'g & Env. Serv., Inc.*, 262 F. Supp. 2d 1004, 1009 (D. Minn. 2003)

("Generally, courts have found that use of the words 'may' and 'should' signify permissive clauses, while use of the words 'shall,' 'will,' or 'must' signify mandatory clauses"). Accordingly, the clause provides that disagreements "arising out of or relating to" the Redemption Agreement must be litigated in a Delaware state court or federal district court located in Wilmington.

The dispute at the heart of the case stems from CCI and Holtzman's parceling out the properties, companies, and business assets they previously owned together—a process executed through the Redemption Agreement containing the challenged forum-selection clause. Fundamentally, this case involves questions about whether Defendant Village Green Management Company, LLC is permitted to invoke the Holtzman family legacy and business accolades after the "business divorce". The Redemption Agreement also specifically includes a clause providing that "any party may publicly or privately relay the history of 'Village Green' generally and the VGH entities in the aggregate, including for marketing reasons, but no Party may misrepresent such history." ECF No. 7-1, PageID.171. Interpreting this clause will be relevant to assessing whether Defendant was in fact permitted to use the Holtzman family's business history in its own advertising following execution of the Redemption Agreement. Additionally, the forum-selection clause specifies that its application is not limited to contract-based claims but instead applies to "all actions or

proceedings . . . whether such actions or proceeding are based in statute, tort, contract or otherwise." ECF No. 7-1, PageID.169. Accordingly, Plaintiffs' claims under the Lanham Act are by no means excluded from the clause's scope.

Plaintiffs point to *Traton News, LLC v. Traton Corp.*, 528 F. App'x 525 (6th Cir. 2013), in which the Sixth Circuit found that the plaintiff's Lanham Act claims did *not* fall within the scope of the forum-selection clause at issue because they did not "arise out of or relate to" the agreement containing the clause. But that case is different because the agreement containing the challenged clause was a "browsewrap agreement"[11] located on the homepage of the website traton.com, which the plaintiff claimed to operate. *Id.* at 526–27. The court determined that the plaintiff's Lanham Act claims fell outside the scope of the forum-selection clause because they were unrelated to the website containing the browsewrap agreement with the forum-selection clause. *Id.* at 530. Instead, the plaintiff's Lanham Act claims stemmed from the defendant's use of the "Traton" mark and the term "News" on other websites it operated. *Id.* at 529–30. Here, however, the facts and claims set forth in the Plaintiffs' Complaint necessarily stem from the Redemption Agreement because that agreement delineates the separation of the

---

[11] A browsewrap agreement discloses terms on a webpage that offers a product or service to an Internet user. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 129 n.18 (2d Cir. 2012). The user consents to the provision "merely by visiting the website to purchase the product or enroll in the service." *Id.*

parties' respective assets, rights, and responsibilities following dissolution of their business partnership. Because Plaintiffs' claims stem from the "business divorce" facilitated by the Redemption Agreement, the Court considers this lawsuit an "action[ ] or proceeding[ ] arising out of or relating to this [Redemption] agreement or the transactions contemplated [by the agreement]." ECF No. 7-1, PageID.169.

### F. Public interest factors weigh in favor of § 1404(a) transfer

Because the Redemption Agreement's forum-selection clause is enforceable by Defendant, is mandatory, and encompasses Plaintiffs' claims in the instant suit, the Court must now apply *Atlantic Marine's* modified analysis to determine whether transfer is warranted under § 1404(a). To reiterate, under *Atlantic* Marine, first, because the parties have already been deemed to have agreed to litigate in another district "the plaintiff's choice of forum merits no weight" and the plaintiff in fact bears the burden of establishing that dismissal or transfer is not appropriate. *Atlantic Marine*, 571 U.S. at 59–60. Second, because the parties are bound by the forum-selection clause "they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64. Finally, when a party bound by a forum-selection clause files suit in a different forum in violation of the parties' agreement a § 1404(a) transfer of venue will not carry with it the choice-of-law rules applicable

in the original venue. *Id.* at 64–65. The Court thus considers only the public-interest factors relevant to dismissal or transfer, which will "rarely defeat a transfer [or forum non conveniens] motion" based on a valid forum-selection clause.[12] *Id.* Public-interest factors to consider include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine*, 571 U.S. at 63 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Applying these considerations to the instant case does not sway the Court against transferring this matter to the District of Delaware. The only relevant public-interest consideration appears to be that Plaintiffs have framed this as a Michigan dispute involving Michigan businesses. Yet that consideration is outweighed by the fact that the parties are already involved in extensive litigation in Delaware, one of those suits having been filed there by Plaintiff Holtzman, who only now urges that these issues should

---

[12] The Third and Fifth Circuits have proposed a modification of this approach where the interests of non-contracting parties are implicated. Specifically, those courts suggest that district courts deciding transfer motions should consider the public interest as well as the private interests "of the parties who have *not* signed a forum-selection agreement." *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 404 (3d Cir. 2017) (citing *In re Rolls Royce Corp.*, 775 F.3d 671, 681 (5th Cir. 2014)). This Court is, however, not aware of any courts in the Sixth Circuit that have followed this line of thinking. Further, consideration of the non-signatory parties' private interests would not yield a different outcome in this matter.

be litigated in Michigan. Plaintiffs have not met their burden of establishing that public-interest considerations weigh against transferring this matter to the District of Delaware.

## CONCLUSION

For these reasons, it is hereby **ORDERED** that Defendant Village Green Management Company, LLC's motion to dismiss or in the alternative to transfer, ECF No. 7, is **GRANTED IN THE ALTERNATIVE**. This case is accordingly **TRANSFERRED** to the District of Delaware. Plaintiffs' motion for leave to file a sur-reply in opposition to Defendant's motion to dismiss, ECF No. 23, is **GRANTED**. Defendant's motion to admit supplemental evidence relevant to the motion to dismiss, ECF No. 32, is also **GRANTED**. Plaintiffs' motion for a preliminary injunction, ECF No. 15, is accordingly **DENIED WITHOUT PREJUDICE**.

**SO ORDERED.**

Dated: January 17, 2020
s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE